**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| LAKISHA O'HARA, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>Defendant. | Case No. 26-cv-3951<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**<u>INTRODUCTION AND SUMMARY OF ACTION</u>**

1. Plaintiff Lakisha O'Hara ("Plaintiff"), on behalf of herself and all others similarly situated, allege the following against Defendant Boston Scientific Corporation ("Defendant").

2. This class action is brought on behalf of individuals whose sensitive and personally identifiable information ("PII") was stolen by cybercriminals in a cyber-attack that accessed Defendant's data on or around August 25, 2026 (the "Data Breach"). The Data Breach has likely affected millions of individuals across the country, though at this time it is unknown how many individuals were affected or exactly what data has been compromised.[1] Issues related to the Data Breach are ongoing.

[1] Steve Alder, *Boston Scientific Cyberattack Impacting Operations*, THE HIPAA J. (Aug. 27, 2026), https://www.hipaajournal.com/boston-scientific-cyberattack/.

3. Nevertheless, Defendant stores a tremendous amount of Plaintiff's PII, likely including name, birth date, billing and mailing addresses, financial information, and Social Security number. Defendant also stores vast quantities of protected health information ("PHI"), likely including that of Plaintiff, it collects from its business associates and directly from patients. Presumably, this PII and PHI (collectively, "Private Information" or "PI") has been compromised for Plaintiff and Class members.

4. As of September 3, 2026, Defendant has yet to notify Plaintiff or provide the public with any specific information regarding the scope of the Data Brach or Defendant's mitigation efforts.

5. Defendant, as a medical-industry expert, knew or should have known how to prevent a common cyberattack.

6. If Plaintiff knew her PI would have been improperly handled, she would have refused to share her PI with Defendant.

7. Accordingly, Plaintiff asserts claims for negligence, negligence *per se*, and unjust enrichment/quasi-contract.

## PARTIES

### A. Plaintiff Lakisha O'Hara

10. Plaintiff Lakisha O'Hara is a citizen and resident of the state of Texas. Plaintiff O'Hara is a former employee of Boston Scientific.

11. Plaintiff O'Hara provided confidential and sensitive PI to Boston Scientific, as requested and required by Boston Scientific from its employees.

12. Boston Scientific collected and continues to maintain Plaintiff O'Hara's PI and has a legal duty and obligation to protect that PI from unauthorized access and disclosure.

**B. Defendant Boston Scientific Corporation**

13. Defendant Boston Scientific Corp. is a Delaware corporation with its principal place of business at 300 Boston Scientific Way, Marlborough, Massachusetts 01752.

## JURISDICTION AND VENUE

14. The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) ("CAFA"), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

15. The Court has personal jurisdiction over Defendant because it is registered to do business in Minnesota and therefore has consented to personal jurisdiction. Defendant maintains significant operations in Minnesota, including two principal manufacturing facilities, two research and development centers and two institutes for advancing science, across which Defendant employs approximately 10,000 individuals.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because this Court had personal jurisdiction over Defendant and, on information and belief, a significant part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this District.

## STATEMENT OF FACTS

### C. Despite knowing the risks, Defendant failed to maintain reasonable and adequate security measures to safeguard the PI it held.

17. Boston Scientific is a dominant market leader in biotechnology, biomedical engineering, and medical-device manufacturing. From interventional radiology to neuromodulation to vascular surgery, Boston Scientific's products and services are used in numerous medical specialties nationwide and across the globe. Defendant has more than 59,000 employees across 53 countries, treats more than 48 million patients each year, and $20 billion in net sales in 2025.

18. In the course of its business, Defendant collects and stores vast quantities of PI for its employees and patients like Plaintiff. It also collects and stores PHI from the hospitals and other entities with which it works, as well as from patients who use their products and services.[2] Defendant was entrusted with, and obligated to, safeguard and protect PII and PHI of Plaintiff and the Class in accordance with all applicable laws.

19. Defendant recognizes the value of PI and the importance of protecting it. Boston Scientific's website provides: "We embed resilient cybersecurity and privacy

[2] *See* Boston Scientific, *Consumer Health Data Privacy Policy*, https://www.bostonscientific.com/en-US/consumer-health-data-privacy-policy.html (last accessed Aug. 27, 2026); Boston Scientific, *Data security, cybersecurity and privacy*, https://www.bostonscientific.com/en-EU/about-us/corporate-responsibility/integrity/data-security-cybersecurity-and-privacy.html (last accessed Aug. 27, 2026).

practices across our enterprise and product portfolio to protect our business, the healthcare providers we serve and the millions of patients who rely on our devices."[3]

20. Defendant publicly claims: "Our global and local data privacy policies align with the applicable privacy regulations, enabling personal data to be collected, processed and stored responsibly. . . . Our cybersecurity strategy is aligned to leading global standards and frameworks, including [NIST Cybersecurity Framework (NIST CSF), NIST 800-53 and ISO 27001.]"[4]

21. At all relevant times, Defendant knew it was storing sensitive PI and that, as a result, its systems would be an attractive target for cybercriminals.

22. Defendant also knew that a breach of its systems, and exposure of the information stored therein would result in the increased risk of identity theft and fraud against the individuals whose PI was compromised.

23. The Data Breach occurred on or around August 25, 2026, and it is an evolving situation.

24. Defendant has not sent notice to affected individuals, instead posting vague updates on its website.[5]

---

[3] Boston Scientific, *Data security, cybersecurity and privacy*, https://www.bostonscientific.com/en-EU/about-us/corporate-responsibility/integrity/data-security-cybersecurity-and-privacy.html (last accessed Aug. 27, 2026).

[4] *Id.*

[5] *Update on recent cybersecurity incident*, BOSTON SCIENTIFIC (last updated Aug. 30, 2026), https://news.bostonscientific.com/update-on-recent-cybersecurity-incident

25. In June 2025, Mandiant—a company offering cyber security services—publicly warned that cybercriminals had begun to target Salesforce CRM customers using tactics such as impersonating IT support staff and requesting that employees accept a connection to Salesforce Data Loader. Once this connection is made, the hackers then exfiltrate the data from Salesforce.[6]

**B. Plaintiff and Class Members Suffered Damages**

26. Plaintiff's information has presumably been compromised in the Data Breach. The extent of compromised PI is unknown but it likely includes Plaintiff's social security number, date of birth, full or partial name, biometric data, telephone numbers, mailing and billing addresses, email addresses, and information contained within state-issued photo identification (including driver's license number, organ donor status, and appearance). The Data Breach also likely compromised individuals' PHI, including patient and record identifiers, information relating to patient treatment (including billing and diagnosis codes, and the dates and locations of treatment), and insurance cards containing name and/or beneficiary number.

27. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so that they are aware of, and prepared for, a potential attack.

[6] Lawrence Abrams, *Allianz Life confirms data breach impacts majority of 1.4 million customers*, BLEEPING COMPUTER (July 26, 2025) https://www.bleepingcomputer.com/news/security/allianz-life-confirms-data-breach-impacts-majority-of-14-million-customers/

28. In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2017, 2.9 million people reported some form of identity fraud compared to 5.7 million people in 2021.[7]

29. The type and breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Defendant's consumers especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

30. PI is a valuable property right.[8] The value of PI as a commodity is measurable.[9] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[10] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[11] It is so valuable to identity

[7] *Insurance Information Institute, Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited Apr. 17, 2023).

[8] *See* Marc Van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFORMATION & COMMUNICATION TECHNOLOGY 26 (May 2015), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . . ").

[9] Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle./824192.

[10] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[11] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report.

thieves that once PI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

31. As a result of their real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PI, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated, and becomes more valuable to thieves and more damaging to victims.

32. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[12]

33. Even if stolen PI does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously

[12] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf (last visited Apr. 17, 2023).

obtained PI about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

34. Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites." [13]

35. Based on the value of PI to cybercriminals and the growing rate of data breaches, Defendant certainly knew the foreseeable risk of failing to implement adequate cybersecurity measures.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings all counts, as set forth below, individually and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of a Nationwide Class defined as:

> All persons whose Private Information was compromised as a result of the cybersecurity incident involving Defendant's systems that occurred on or around August 25, 2026. (the "Class").

37. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same

---

[13] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) Information Systems Research 254 (June 2011), https://www.guanotronic.com/~serge/papers/weis07.pdf.

evidence as would be used to prove those elements in individual actions alleging the same claims.

38. ***Numerosity*****—**Federal Rule of Civil Procedure 23(a)(1). The members of the Class are so numerous that joinder of all Class members would be impracticable. On information and belief, the number of Class members is likely in the hundreds of thousands or millions.

39. ***Commonality and Predominance*****—**Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all members of the Class and predominant over questions affecting only individual members of the Class. Such common questions of law or fact include, *inter alia*:

a. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

b. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

c. Whether Defendant's properly implemented its purported security measures or their associate's purported security measures to protect Plaintiff's and the Class's PI from unauthorized capture, dissemination, and misuse;

d. Whether Defendant took reasonable measures to determine the extent of the Data Breach after it first learned of it;

e. Whether Defendant disclosed Plaintiff's and the Class's PI in violation of the understanding that the PI was being disclosed in confidence and should be maintained;

f. Whether Defendant's conduct constitutes breach of an implied contract;

g. Whether Defendant willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the Class's PI;

h. Whether Defendant was negligent in failing to properly secure and protect Plaintiff's and the Class's PI;

i. Whether Defendant was unjustly enriched by their actions; and

j. Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

40. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and other members of the Class. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action

41. ***Typicality***—Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of the claims of the other members of the Class, because among other things, all Class members were similarly injured through Defendant's uniform misconduct described above and were thus all subject to the Data Breach alleged herein. Further, there are no defenses available to Defendant that are unique to Plaintiff's.

42. ***Adequacy of Representation***—Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Class because her interests do not conflict with

the interests of the Classes she seeks to represent, she has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

43. ***Injunctive Relief***—Federal Rule of Civil Procedure 23(b)(2). Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class.

44. ***Superiority***—Federal Rule of Civil Procedure 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I
**Negligence**

45. Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

46. Defendant owed numerous duties to Plaintiff and the Class, including the following:

a. A duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting PI in its possession;

b. A duty to protect PI using reasonable and adequate security procedures, systems, and resolutions that are compliant with industry-standard practices;

c. A duty not to subject Plaintiff's and the Class's PI to an unreasonable risk of exposure and theft because Plaintiff and Class were foreseeable and probable victims of any inadequate security practices.

d. A duty to use reasonable security measures that arose as a result of the special relationship that existed between Defendant and patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law.

47. Upon Defendant accepting and storing the PI of Plaintiff and the Class in its computer systems and on their networks, Defendant undertook and owed a heightened duty to Plaintiff and the Class to exercise reasonable care to secure and safeguard that

information and to use commercially reasonable methods to do so. Defendant knew that the PI was private and confidential and should be protected as such.

48. Defendant's duty to use reasonable security measures under HIPAA for patient-related PI required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). At least a portion of the PI exfiltrated in this case likely constitutes "protected health information" within the meaning of HIPAA.

49. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

50. Defendant's violation of the FTC Act and state data security statutes constitutes negligence *per se* for purposes of establishing the duty and breach elements of Plaintiff's negligence claim. Those statutes were designed to protect a group to which Plaintiff belongs and to prevent the type of harm that resulted from the Data Breach.

51. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of statutes and regulations, but also because cybersecurity and healthcare industry standards bound Defendant to protect confidential PI.

52. Defendant's own conduct also created a foreseeable risk of harm to Plaintiff and Class members and their PI. Defendant's misconduct included failing to: (1) secure

Plaintiff's and Class members' PI; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; (4) respond to security alerts in a timely manner and (5) implement the systems, policies, and procedures necessary to prevent this type of data breach. Defendant was in a special position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class members from a data breach.

53. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class members' PI. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class members' PI;

b. Failing to adequately monitor the security of Defendant's networks and systems;

c. Allowing unauthorized access to Plaintiff's and Class members' PI;

d. Failing to resolve in a timely manner that Plaintiff's and Class members' PI had been compromised; and

e. Failing to offer protection to Plaintiff and Class members to mitigate the potential for identity theft and other damages.

But for Defendant's breach of its duties, the PI would not have been stolen.

54. Through Defendant's acts and omissions described in this Complaint, including their failure to provide adequate security and their failure to protect Plaintiff's and Class members' PI from being foreseeably captured, accessed, disseminated, stolen

and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiff's and Class members' PI during the time it was within Defendant's possession or control.

55. Defendant's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to, failing to adequately protect the PI of Plaintiff and Class members.

56. Plaintiff and Class members had no ability to protect their PI once it was in Defendant's possession and control. Defendant was in an exclusive position to protect against the harm suffered by Plaintiff and Class members as a result of the Data Breach.

57. Neither Plaintiff nor the other Class members contributed to the Data Breach and subsequent misuse of their PI as described in this Complaint.

58. There is a temporal and close causal connection between Defendant's failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiff and Class members.

59. Plaintiff and Class members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free credit monitoring and compensation for harm to all Class members.

## COUNT II
**Negligence *per se***

60. Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

61. Defendant owed a duty to Plaintiff and Class members to keep their Sensitive Private Information secure, arising under FTC Act.

62. Specifically, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to use reasonable measures to protect Sensitive Private Information. Various FTC publications and orders further form the basis of Defendant's duty.

63. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Sensitive Private Information and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Private Information it obtained and stored and the foreseeable consequences of a data breach involving the highly sensitive PI that Defendant collected, stored, and maintained, including the damages that would result to Plaintiff and Class members.

64. Plaintiff and Class members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

65. Defendant is a HIPAA covered entity.

66. Plaintiff and the Class, as patients, are within the class of people HIPAA was designed to protect and HIPAA was intended to protect Plaintiff and the Class against the

type of harm that occurred, namely, unauthorized access to Plaintiff's and the Class's medical information.

67. Defendant's implementation of inadequate data security failed to comply with HIPPA.

68. Defendant's violations of Section 5 of the FTC Act as well as HIPAA constitutes negligence *per se*.

69. Defendant violated its duties by, among other things, maintaining inadequate security systems, implementing protocols and practices that were insufficient to protect the Sensitive Private Information of Plaintiff and Class members, and by failing to timely and adequately notify Plaintiff and Class members of the Data Breach.

70. Defendant's violations constitute negligence *per se* because Defendant violated laws designed to protect a specific class of persons—Plaintiff and Class members—from a particular type of harm that Defendant's conduct caused.

71. Plaintiff and Class members suffered injuries of the type the statutes were intended to prevent, including: (a) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (b) the loss of the value of their privacy and the confidentiality of the stolen Sensitive Private Information and loss of control over their Sensitive Private Information; (c) the illegal sale of the compromised Sensitive Private Information on the black market; (d) the present and continuing threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (e) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (f) the time spent in response to the Data Breach reviewing bank

statements, credit card statements, financial account statements, credit reports, health insurance statements, and other related activities; (g) the expenses incurred and time spent initiating fraud alerts; (h) the resulting decrease in credit scores and ratings; (i) emotional distress; (j) their lost work time; (k) the lost value of the Sensitive Private Information; (l) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; and (m) nominal and general damages and other economic and non-economic harm suffered.

72. Defendant's violations of these statutes were a direct and proximate cause of Plaintiff's and Class members' injuries and damages.

73. As a result of Defendant's negligence *per se*, Plaintiff and Class members are entitled to all relief available under law, including compensatory and consequential damages, statutory damages where available, injunctive relief, and such other relief as the Court deems just and proper.

**COUNT III**
**Unjust Enrichment/Quasi-Contract**

74. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

75. This claim is pleaded in the alternative to Plaintiff's other claims.

76. Plaintiff and Class members conferred benefits upon Defendant.

77. In exchange for providing payment and PI, Plaintiff and Class members should have received adequate safeguarding of their PI.

78. Defendant knew that Plaintiff and Class members conferred a benefit on it and accepted, has accepted, or retained that benefit. Defendant profited from Plaintiff's payments and used Plaintiffs and Class members' PI for business or business associate purposes. Defendant has not compensated the victims of the Data Breach.

79. Defendant failed to secure Plaintiff's and Class members' PI and, therefore, did not provide full compensation for the benefit the Plaintiff's and Class members' PI provided.

80. Defendant acquired the PI through inequitable means as it failed to disclose the inadequate security practices previously alleged.

81. If Plaintiff and Class members knew that Defendant would not secure their PI using adequate security, they would not have made transactions with Defendant or Defendant's associates.

82. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class members conferred on it.

83. Under principles of equity and good conscience, Defendant should not be permitted to retain the full monetary benefit of its transactions with Plaintiff and Class members. Defendant failed to adequately secure the PI it held and, therefore, did not provide the full services that Plaintiff and Class members directly or indirectly paid for. Patients now must monitor their personal, immutable PI for the rest of their lives.

84. If Plaintiff and Class members knew that Defendant employed inadequate data security safeguards, they would not have agreed to provide Defendant with PI.

85. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered the various types of damages alleged herein.

86. Plaintiff and Class members have no adequate remedy at law. Defendant continues to retain Plaintiff's and Class members' PI, and similar data security practices and vendors while exposing the PI to a risk of future data breaches of PI in Defendant's possession.

87. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class members overpaid.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief:

(a) An Order certifying this case as a class action;

(b) An Order appointing Plaintiff as class representative;

(c) An Order appointing the undersigned counsel as class counsel;

(d) An award of compensatory damages to Plaintiff, money for significant and reasonable identity protection services, statutory damages, treble damages, and damages;

(e) injunctive relief requiring Defendant to, *e.g.*: (i) strengthen and adequately fund its data security systems and monitoring procedures; (ii) submit to future

independent annual audits of those systems and monitoring procedures; (iii) implement encryption of sensitive PI in all databases for all clients; and (iii) immediately provide free credit monitoring to all Class members;

(f) An Order for Defendant to pay equitable relief, in the form of disgorgement and restitution, and injunctive relief as may be appropriate;

(g) An Order for Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

(h) An award of Plaintiff's attorneys' fees and litigation costs; and

(i) Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, on behalf of herself and the Class, demands a trial by jury of all issues so triable.

Date: September 9, 2026

By: /s/ David A. Goodwin

Daniel E. Gustafson (#202241)
David A. Goodwin (#386715)
Joe E. Nelson (#402378)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
jnelson@gustafsongluek.com

Jon A. Tostrud (#0251768)
Anthony M. Carter (*pro hac application forthcoming)*
**TOSTRUD LAW GROUP, P.C.**

1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

Erik H. Langeland (*pro hac application forthcoming*)
**ERIK H. LANGELAND, P.C.**
733 Third Avenue, 16th Floor
New York, NY. 10017
Telephone: (212) 354-6270
elangeland@langelandlaw.com

*Attorneys for Plaintiffs and the Proposed Class*